SUDINSKI *v.* KROHN.

1. NEGLIGENCE—MOTOR VEHICLES—QUESTION FOR JURY.

In an action for personal injuries caused to plaintiff when he was struck by defendants' automobile, the determination of the trial judge that the conflicting testimony presented a case for the jury, *held,* justified by the record.

2. APPEAL AND ERROR — TRIAL — ARGUMENT OF COUNSEL — MOTOR VEHICLES—INSURANCE.

Reference to an insurance company, by plaintiff's counsel in his argument to the jury, cannot be said to be prejudicial error, where the record does not contain what was said, and the trial judge promptly at the time and again in the general charge cautioned the jury to disregard said statement.

3. TRIAL—EVIDENCE—ARGUMENT OF COUNSEL.

Where plaintiff, without objection and evidently in support of a claimed admission of liability on defendants' part, testified that one of the defendants said their automobile was insured and the insurance company would settle with plaintiff, reference to an insurance company in the argument of plaintiff's counsel cannot be said to constitute reversible error.

4. SAME — NEGLIGENCE—GROSS NEGLIGENCE—CASE PROPERLY SUBMITTED ON BOTH THEORIES WHERE SUPPORTED BY TESTIMONY.

Where there was ample testimony to support a verdict for plaintiff either on the theory of gross negligence or that of ordinary negligence, the trial judge properly submitted the case to the jury on both theories.

5. APPEAL AND ERROR—NEGLIGENCE—GROSS NEGLIGENCE—APPLICABILITY OF THEORY OF SUBSEQUENT NEGLIGENCE.

Defendants' claim that the theory of subsequent negligence may not be applied to the instant case, although well founded if the accident happened as claimed by them, is without merit where the facts were in dispute, and the jury found against defendants thereon.

---

[1]Motor Vehicles, 42 C. J. § 1071; 2 R. C. L. 1186; 1 R. C. L. Supp. 725; 4 R. C. L. Supp. 148; 5 R. C. L. Supp. 135; 6 R. C. L. Supp. 130; [2]Appeal and Error, 4 C. J. §§ 2318, 2938; [3]Trial, 38 Cyc. p. 1498; [4]Motor Vehicles, 42 C. J. § 1146; [5]Appeal and Error, 4 C. J. § 2836.

6. SAME—ASSIGNMENTS OF ERROR NOT DISCUSSED WAIVED.
    Assignments of error not discussed in appellants' briefs
    are considered by the Supreme Court as waived.

.7. SAME—INSTRUCTION NOT MISLEADING NOT ERROR.
    An instruction by the trial judge that plaintiff could re-
    cover even if he was negligent "at the time and place in
    question," which clearly meant on the occasion of the ac-
    cident, and which could not have misled the jury because
    in other portions of the charge the law relative to sub-
    sequent negligence was clearly stated, cannot be said to
    constitute prejudicial error.

Error to Ottawa; Cross (Orien S.), J.    Submitted
January 3, 1928.    (Docket No. 9.)    Decided June
4, 1928.

Case by Jack Sudinski, an infant, by his next friend,
against Herbert Krohn and another for personal in-
juries.    Judgment for plaintiff.    Defendants bring
error.    Affirmed.

*Charles E. Misner* and *Frank F. Ford,* for appel-
lants.

*Dilley, Souter & Dilley* and *Louis H. Osterhous,* for
appellee.

NORTH, J.    This suit was brought to recover dam-
ages for personal injuries sustained by the plaintiff
incident to his being struck by an automobile belong-
ing to the defendant Herbert Krohn, and which at
the time was being driven by the defendant, Mrs.
Bertha Krohn.    The plaintiff prevailed in the circuit
court, and the defendants have appealed.    The ac-
cident happened in the township of Spring Lake,
Ottawa county, at a point where the traffic going
westerly on M-16 may proceed in a southerly direction
on M-11 towards Grand Haven, or in a northerly
direction on M-11 towards Muskegon.    The turn in

ᵃAppeal and Error, 4 C. J. § 3057; ᵇMotor Vehicles, 42 C. J.
§ 1138.

a southerly direction has been rounded off so it is made by a long sweeping curve.    Where the two highways diverge in a northerly and southerly direction the concrete pavement has been widened to approximately 150 feet.    The plaintiff, a young man about 19 years old, and another young man, had ridden to this point on a truck, coming from the east.    After leaving the truck they walked from the northerly side of this widened portion of the pavement in a southerly or southeasterly direction, intending to proceed along the left-hand side of the pavement and on around the curve in a southerly direction toward Grand Haven.    As they were crossing, or shortly thereafter, Mrs. Krohn approached from the east on M-16, and as she was rounding the curve at the corner the accident happened.

There is a sharp conflict in the evidence as to just how and where the plaintiff sustained his injury.    The plaintiff's own testimony, in substance, is as follows:

"When we started to cross there, there were no cars coming.    I looked before we started to cross the pavement and did not see any cars coming.    I did not have my arm up to my face.    We were walking on the left-hand side of the pavement toward Grand Haven.    We had to cross the pavement from where we were to go over to the left-hand curve.    We were walking together side by side.    I was walking on the left-hand side of my friend.    At the time we started along the pavement towards Grand Haven there were no other automobiles being driven in either direction on the road.    We looked each way and there was nothing coming when we were walking.    As we walked along the pavement toward Grand Haven we did not at any time see an automobile.    Saw no car coming in any direction before I was hurt.    I did not hear the sound of an automobile horn, or any signal or warning of any kind.    I was hit by the fender or wheel on the front of the car and I stepped back and the door handle caught hold of my arm, threw me back of the car.    I did not see or hear the car at all, but my friend did and grabbed me by the arm.    I had been walking on the pavement be-

fore I was struck five or ten minutes.    I was nearly around the curve on the left-hand side of the road when I was struck.    I was struck on the left-hand side.    The car was between me and the curb.    After the car hit me it was near the bridge when it stopped; it went about a block and a half."

Harry DeYoung, the plaintiff's companion, testified to the following:

"We had gotten almost around the curve toward Grand Haven before Sudinski was struck.    The accident occurred about the width of the car from the curb.    We were walking along and I heard a kind of a noise and I looked around quick and the car was almost on top of us and I hollered 'Jack,' and I tried to grab for him and I was too late.    He was on the pavement before I could think of it.    When I turned around the car was only 12 or 15 feet from us going toward Grand Haven.    The car was about a foot from the left-hand curb when it struck Sudinski. I think I heard a horn.    I cannot tell exactly what part of the car struck him first.    Some part of the front of the car hit him on the leg and threw him. *   *   *   I did not see any other cars coming in either direction at that time.    At the time Sudinski was struck he was looking straight ahead and walking in the direction toward Grand Haven.    We were walking on the left-hand side of the road.   *   *   *   We weren't crossing the road then; we were walking down the road toward Grand Haven.   *   *   *   The front part of the car struck him.    It is not a fact that the plaintiff walked right into the side of this car. *   *   *   We looked down the road to the east toward Grand Rapids after we got on the left-hand side but did not see any one coming, and we kept on walking on the left-hand side."

Mrs. Krohn, the driver of the car, gave the following testimony:

"I saw both of the men as they got out of the truck. They left the truck and they started in a diagonal path toward the left-hand side.    When I first saw them they were about one-half a city block away.    It was about 2 o'clock in the afternoon.    It was light, but

it was snowing and blowing.   I did not see any other cars.    There wasn't a car around.    I had no difficulty in seeing the men and they were in full view and sight all the time until the plaintiff was struck.   I saw the direction in which they were walking and their manner and appearance as they walked on the pavement.   I think they would have to walk not quite as far as across this (court) room and in order to reach them I had to drive something like one-half a city block. I did not see them walk clear across the pavement.   I cannot say just how far they got.   They were about 15 or 20 feet from the curb when Mr. Sudinski was struck.   He kept on walking.   He did not stop, that is how he walked into the back end of the car.   In order to avoid him I turned over to the left as far as I could.   The fender of the car was just about at the curb.   There was about four times as much unobstructed pavement behind the plaintiff as there was in front of him.   He was facing the curb and walking towards the curb.   I was watching the young man about to cross the road in front of my car all the time.   When I was from 20 to 25 feet away from him I blew my horn.   When I blew the horn the one young man stopped.   The plaintiff had his coat collar clear up around his head with his hand, neither looked to the right or the left but kept right on walking.   He did not look in my direction or stop.   It was a cold, stormy day and I think it was blowing from the east or northeast, and as he walked across the pavement the wind would be blowing against him on the left-hand side, and that was the direction from which I was coming.   I didn't know that he hit the car until I heard something hit the back of the car and naturally I turned around and looked back and he was just getting up from the road.   I was about 15 or 20 feet from the place of the accident when I stopped the car.   I didn't slow up so as to allow him to cross or pass.   I blew the horn.   I thought they would wait. When I saw he didn't stop I turned my car to the left to cut in between him and the curb.   I could have stopped, and waited for him to go across the road, but I thought he would stop.   He didn't look.   He showed no sign of having heard the horn."

The testimony of Mrs. Krohn to quite an extent was

corroborated by that given by Mr. Arthur Page, who seemed to be an entirely disinterested witness. A careful consideration of the record convinces us that the trial judge was fully justified in his opinion that the conflicting testimony presented issues of fact and that the case was one for the determination of the jury. It follows that the defendants' motion for a directed verdict and also their motion for judgment notwithstanding verdict were properly denied.

One of defendants' assignments of error is based upon the claim that their rights were prejudiced in consequence of plaintiff's attorney making a "reference to the insurance company" in his argument to the jury. Just what was said by plaintiff's counsel does not appear in the record; but the court promptly cautioned the jury to disregard the statement in deciding the case, and also covered this again in the general charge. Since the record gives us no information as to the extent or nature of the reference made, we cannot hold it to have been prejudicial error, especially in view of the prompt and definite instruction to the jury given by the circuit judge. *Greenwold* v. *Faber,* 234 Mich. 217; *Sutzer* v. *Allen,* 236 Mich. 1. It should also be noted that in this case there was a legitimate reference in the testimony to an insurance company. Plaintiff testified that Mrs. Krohn said she had insurance on her car; that the agent would be down and the insurance company would settle with the plaintiff. This conversation was denied by Mrs. Krohn; but the testimony had been taken without objection and evidently in support of a claimed admission of liability on the part of Mrs. Krohn. With such a record, it cannot be said that the reference to an insurance company in the argument of plaintiff's counsel constituted reversible error.

Complaint is also made because the case was submitted to the jury on the theory of gross negligence or subsequent negligence as well as that of ordinary

negligence.    From the recital of the testimony here-inbefore made, and from what appears in other portions of the record, this appears to have been entirely proper.    If the jurors accepted the plaintiff's theory that he and his companion had gotten across the pavement and had proceeded some distance around the curve towards Grand Haven, and were walking on the left-hand side of the highway, clearly the record was such that the jurors might have found the plaintiff free from any contributory negligence and that Mrs. Krohn's negligence was the sole and proximate cause of plaintiff's injury, or they might have found her guilty of more than ordinary negligence because of the wanton or reckless manner in which the defendants' automobile was driven as it overtook and struck the plaintiff.    On the other hand, even if the jurors accepted the defendants' theory that this accident happened while plaintiff and his companion were still in the act of crossing the highway, under Mrs. Krohn's own testimony and from other proof in the record, it may have been found that the accident happened under such circumstances that the defendants are chargeable with so-called gross negligence.    There is ample testimony to support a verdict on either theory, and the case was properly so submitted.

Defendants' counsel strenuously contend that the physical facts surrounding the accident are such that the theory of subsequent negligence could not be applied to this case.    This contention is based on the assertion that the plaintiff's contributory negligence continued up to the instant of the accident and was a direct and concurring cause thereof.    But this is not a necessary or unavoidable inference from the evidence. In view of the conflicting testimony, it was a question of fact for the jury.    The theory of discovered negligence has been repeatedly applied in this State to accidents which happen under circumstances that were similar in this respect.    *Gibbard* v. *Cursan,* 225 Mich.

311; *Halzle* v. *Hargreaves,* 233 Mich. 234; *Steele* v. *Stahelin,* 234 Mich. 307. ' The defendants claim that plaintiff ran into the rear portion of the automobile. A large portion of their briefs is devoted to presenting the case on this theory.    If it had been established that the accident happened in this way then, as claimed by the defendants, because of plaintiff's contributory negligence he could not have prevailed, and the theory of subsequent negligence could not have been applied to the case.    But the record conclusively discloses that the jury did not find that the plaintiff ran into the rear portion of the automobile.    On this phase of the case the court charged the jury as follows:

"You are instructed that if you find under the evidence in this case the plaintiff walked directly into the side of defendants' car, and that this act caused the injury to him, then your verdict should be no cause for action."

Since the plaintiff did recover, it is evident that the jury found the accident was not caused by his running into the side of the machine.    This renders it unnecessary to refer to many of the contentions and assertions in appellants' brief.

The remaining assignments of error relate to the charge of the court as given to the jury, or to the refusal of the court to give requested instructions. There are 17 such assignments of error, but only one of these has been discussed in appellants' briefs, and therefore the others will be considered as waived. *In re Morse's Estate,* 170 Mich. 114; *Raymond* v. *Insurance Co.,* 236 Mich. 393.    It is argued in behalf of appellants that the trial court instructed the jury that concurring negligence of the plaintiff is not a bar to his right to recover.    This claim is based on the following portion of the charge:

"It is a general rule of law that if a person injured by the negligence of another is himself guilty of negligence contributing to his injury he cannot recover

therefor. But this rule does not apply if the negligence of the one is known to the other and he does not then use reasonable care and caution to avoid an injury, and in this case, even should you find the plaintiff to have been negligent at the time and place in question, he can recover in this case if you further find that Mrs. Krohn, after seeing him, and being aware of his presence on the highway and of the manner in which he was walking thereon, did not use care and caution to avoid injury to him."

It is said in appellants' brief:

"Here the court charges the jury that plaintiff could recover even though he was negligent at the time and place in question and although his negligence was concurrent with that of Mrs. Krohn."

We think the expression "at the time and place in question" was not intended to convey and did not convey to the jury the thought or meaning defendants' counsel attribute to it. In saying "at the time and place in question," the court clearly meant on the occasion of the accident. In other portions of the charge the law relative to subsequent negligence was clearly stated, and we are satisfied that the jury was not misled by the language of the court above quoted. As hereinbefore indicated, the proof justified submitting this case to the jury on the theory of subsequent negligence, and the appellants have failed to point out any prejudicial error in the charge applicable to this issue.

Another portion of the charge quoted in appellants' brief is claimed to have been an erroneous statement of the law and prejudicial. Error was not assigned as to the part of the charge so quoted and for that reason it ought not to be reviewed; but, if such were not the condition of the record, we would not be disposed to hold there was such error in this portion of the charge as to adversely affect the rights of the defendants.

We have given due consideration to each phase of the record as presented by appellants, but find no just cause for setting aside the verdict and judgment.

The case is affirmed, with costs to the appellee.

FELLOWS, WIEST, and SHARPE, JJ., concurred. CLARK and MCDONALD, JJ., concurred in the result.

The late Chief Justice FLANNIGAN did not sit.

The late Justice BIRD took no part in this decision.