PEOPLE *v.* FLEISHER.

1. CRIMINAL LAW—CONTINUANCE—DISCRETION OF COURT.
    The trial judge is vested with discretionary power in the matter
    of granting or denying a continuance in a criminal case.

2. SAME—CONTINUANCE—ILLNESS OF ALIBI WITNESS—ABUSE OF
    DISCRETION—DUE PROCESS.
    In prosecution of five defendants for robbery armed, where pre-
    liminary examination was concluded on June 22d and defend-
    ants bound over for trial to be held on October 23d, denial of
    defendant's motion for continuance because of illness of wife
    who was to support his claim of alibi was not an abuse of
    discretion nor a denial of due process, where motion therefor
    was not filed until October 19th although wife had been seri-
    ously ill or hospitalized for upwards of seven weeks, her
    physician did not advise her appearance for at least 30 days
    more, her testimony would have been largely cumulative, de-
    fendant failed to give statutory notice of alibi and deposition
    of wife was not taken (3 Comp. Laws 1929, § 17313; Act No.
    328, § 529, Pub. Acts 1931).

3. SAME—CONTINUANCE—CHANGE OF COUNSEL—ABUSE OF DISCRE-
    TION.
    In absence of showing why a defendant's former counsel ceased
    to represent him four days before date for which trial had

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 12 Am. Jur., Continuances, § 5.
[2, 4] 12 Am. Jur., Continuances, § 23 *et seq.*
[3] 12 Am. Jur., Continuances, § 13.
[4] Continuance to procure witness who is beyond the jurisdiction.
        L.R.A. 1918E, 527.
[5, 6] 27 Am. Jur., Indictments and Informations, § 46.
[8] 3 Am. Jur., Appeal and Error, § 834.
[12] 15 Am. Jur., Criminal Law, § 474.
[12] Power of court to set aside sentence after commitment or pay-
        ment of fine.  168 A.L.R. 706.
[13] 3 Am. Jur., Appeal and Error, § 781.
[14] 27 Am. Jur. Indictments and Informations, § 14.
[15] 14 Am. Jur., Criminal Law, § 265.

been set over seven weeks previously, the denial of a continuance for mere change of counsel was not an abuse of discretion.

4. SAME—RES GESTAE—EVIDENCE—ABSENT WITNESS.

In prosecution of five defendants for robbery armed in which two cars were used to transport defendants and others to scene of the crime, it was not reversible error to deny motions to require prosecution to indorse name of person to whom owner of car stated he loaned one of the cars as a *res gestae* witness, to continue case until such person could be obtained and that prosecution disclose names of officers who might have knowledge of such person's whereabouts, where it is not shown that such person knew who drove the car in question at the time involved, the matter was a mere incident, and complicity of defendants with the robbery was otherwise established and month's effort on part of officers in locating such person was without success (Act No. 328, § 529, Pub. Acts 1931).

5. SAME—ROBBERY ARMED—ABSENT WITNESS.

Where a witness in prosecution for robbery armed was diligently but unsuccessfully searched for by officers for over a month during course of a protracted trial, there was sufficient excuse shown for leaving his name off the information and not producing him at the trial (Act No. 328, § 529, Pub. Acts 1931).

6. SAME—ROBBERY ARMED—ABSENT WITNESS—RES GESTAE.

Denial of motions to indorse name of person to whom owner had loaned car as *res gestae* witness in prosecution for robbery armed and to produce such person or officers who were searching for him as witnesses, was proper, where such showing as was made of his whereabouts was that he was beyond the jurisdiction of the court, there was no showing that any testimony he might have given would have been favorable to appellants and names of officers assigned to look for him were given prior to denial of motions (Act No. 328, § 529, Pub. Acts 1931).

7. SAME—OTHER OFFENSES—EVIDENCE.

In prosecution of five defendants for robbery armed wherein one of them who had been convicted of conspiracy to murder in another case was asked whether or not he was guilty of such crime, exclusion of answer was not reversible error, as the answer to such question pertained to an issue which had been adjudicated in the trial court, was foreign to issue in instant case and such other conviction, then pending on appeal, was later affirmed (Act No. 328, § 529, Pub. Acts 1931).

8. Evidence—Judicial Notice—Supreme Court Records.

> The Supreme Court takes judicial notice of its own records in other cases.

9. Criminal Law—Other Offenses—Evidence.

> In prosecution of five defendants for robbery armed wherein a witness for the people had been arrested in connection with the murder of a State senator and had made a written statement the production of which was demanded from the people, denial of such demand was not error, where crimes involved were wholly separate and it is not made to appear that anything in the demanded statement contained anything relative to issue of instant case (Act No. 328, § 529, Pub. Acts 1931).

10. Same—Instructions—Requests to Charge.

> Lengthy charge to jury in prosecution of five defendants for robbery armed which covered all phases of the case essential to a fair and impartial trial, held, not prejudicial, although it did not include certain requests that were argumentative, pertained to matters for determination by the court or were otherwise covered (Act No. 328, § 529, Pub. Acts 1931).

11. Same—Instructions—Coercion of Verdict.

> Unsolicited charge to jury, urging that they endeavor to come to an agreement during their deliberations was not prejudicial as coercing verdict of conviction.

12. Same—Sentence—Vacating Order Attempting Change.

> A valid sentence is not invalidated by an attempted change by the trial judge, hence, it was not error to vacate invalid order attempting to reduce the sentence.

13. Appeal and Error—Briefs—Motion to Dismiss Appeal.

> Normally where an appellant fails to file a brief on appeal, the appeal as to him would be dismissed on motion.

14. Indictment and Information—Fugitive from Justice—Preliminary Examination.

> An information may be filed against a fugitive from justice without submitting him to a preliminary examination (3 Comp. Laws 1929, § 17256).

15. Criminal Law—Waiver of Preliminary Examination.

> One waives prior alleged defects or irregularities by pleading not guilty to an information filed against him charging him with crime.

16. INDICTMENT AND INFORMATION—MOTION TO QUASH—PLEA OF
GUILTY.

Claim of error in denial of motion to quash information as to one
of five accused of crime of robbery armed because he had not
been afforded the right to arraignment on the original com-
plaint and warrant, that there was no proof he was a fugitive
from justice and testimony taken at preliminary examination
did not mention or identify him as participating in the alleged
offense *held*, without merit, and such denial was not an abuse
of discretion where motion was made five days before date for
which trial was set some seven weeks previously and after he
had been extradited and pleaded not guilty to information
charging him with the crime (Act No. 328, § 529, Pub. Acts
1931).

17. CRIMINAL LAW—IRREGULARITIES—RECORD—FAIR TRIAL.

Record on appeal of four of five defendants in prosecution for
robbery armed, which disclosed some irregularities in course
of trial lasting for over six weeks *held*, not to have resulted
in depriving defendants of a fair trial and to have supported
their conviction (Act No. 328, § 529, Pub. Acts 1931).

18. SAME—NEW TRIAL.

Motions for new trial in prosecution of five defendants for rob-
bery armed *held*, to have been properly denied.

Appeal from Oakland; Hartrick (George B.), J.
Submitted June 16, 1948. (Docket No. 67, Calendar
No. 43,649.) Decided October 4, 1948. Rehearing
denied November 12, 1948. Application for certio-
rari filed in Supreme Court of the United States
March 31, 1949, by defendant Mahoney.

Harry Fleisher, Mike Selik, Pete Mahoney and
William W. Davidson were convicted of robbery
armed. Affirmed.

*Eugene F. Black,* Attorney General, *Edmund E.
Shepherd,* Solicitor General, *H. H. Warner* and *Dan-
iel J. O'Hara,* Assistants Attorney General, and
*Lewis R. Bebout,* Special Assistant Prosecuting At-
torney, for the people.

*Edward H. Kennedy, Jr.,* for defendants Fleisher
and Selik.

*Howard I. Bond,* for defendant Mahoney.

NORTH, J. This appeal is in a case in which defendants were charged with robbery while armed with dangerous weapons.* They were convicted by a jury and each defendant was sentenced for a term of years in the State's prison of southern Michigan. Motions for new trials were denied. Defendant Chivas has taken a separate appeal, which is not involved in our decision herein.

Between 3 a.m. and 4 a.m., December 2, 1944, a gambling establishment, the Aristocrat Club, operated by James Dades in Pontiac, Oakland county, was robbed. Henry Luks and Sam Abramowitz, the people's principal witnesses, having been granted immunity when they appeared as witnesses in a one-man grand-jury proceeding, testified at the trial of this case that they together with defendants herein committed this robbery. The people's testimony in substance was that about 1 o'clock on the night of the robbery Luks, Abramowitz and the defendants herein met at a coffee house operated by defendant Mahoney in Detroit and there planned the robbery. The proceeds of the crime, which were thought would be not less than $15,000, were to be divided between Luks, Abramowitz, Davidson and Chivas. As. to Fleisher (whose correct name is Fleish), Mahoney and Selik, it was thought the robbery would put Dades out of business and the three defendants last above named would be enabled to take over Dades' place of business where gambling was carried on.

The people claim that preparatory to making the trip from Detroit to Pontiac, through one Hyman Niskar who occupied a room in Selik's apartment, the use was obtained of an automobile belonging to Martin Eisner, who was one of the people's witnesses; that five of the seven men participating in the robbery drove to Pontiac in the Eisner car, and

---

* See Act No. 328, § 529, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 17115-529, Stat. Ann. § 28.797).—REPORTER.

that Mahoney and Chivas, carrying three revolvers, went to Pontiac in Mahoney's automobile, but there is also testimony that six of the men rode in the Eisner car and Mahoney went alone in his car; that the two cars arrived in Pontiac about the same time and finally were parked across the street from the building where Dades' club occupied the second floor. Further that Chivas, who appears to have had access to the club, went in but shortly he returned to one of the automobiles and reported that only a few persons were present in the establishment and that prospects were not good for obtaining substantial results. Nonetheless it was decided he should return to the club and be instrumental in enabling others of the party to gain admission. Thereupon Luks, Abramowitz and Davidson, each being provided with a 38 revolver from Mahoney's automobile, made an unsuccessful attempt to gain admission to Dades' place. But shortly thereafter they made a second trip to the entrance door where, according to the people's testimony, after Luks had gained admission to the club, Abramowitz smashed the glass in the entrance door, reached in, unlocked the door, and Davidson entered the club. In breaking the glass Abramowitz was seriously cut on his arms and wrists. He bled so profusely that shortly he hurried back to the Eisner car, got into it, talked briefly with occupants, and then, as the people claim, went to Mahoney's car and was driven back to Detroit by Mahoney. However, defendants claim that Luks with the Eisner car in which blood stains were later found, drove Abramowitz back to Detroit.

It is the theory and testimony of appellants that none of them had anything to do with or any knowledge of the robbery. To that effect testimony was given by Fleisher, Selik and Mahoney. Defendants claim the crime was committed by Luks, Abramowitz and some other accomplice. Admittedly a rob-

bery was accomplished and resulted in the perpetrators obtaining somewhere from $600 to $1,600, as shown by conflicting testimony. Other attendant circumstances will be noted later herein, and also some other details appear in Mr. Justice Sharpe's opinion in *People* v. *Chivas, ante,* 384.

We first give consideration to the contention seriously urged in behalf of defendant Selik that prejudicial error resulted from denial of his motion for a continuance. On the examination, concluded June 22, 1945, Selik was held for trial. He was arraigned August 30th and pleaded not guilty. On that date it was ordered that the "cause be marked ready for trial October 23, 1945." On October 19th Selik's motion for continuance was served on the prosecuting attorney and it was heard October 22, 1945. In effect it advised the court and counsel that in his defense Selik claimed that at the time this robbery was committed in Pontiac, Selik was at home with his wife in Detroit, and that in support of such alibi (and for that purpose only) the testimony of his wife was essential, but owing to her illness it was claimed she was not able to appear in court as a witness and would not be for at least 30 days. The record discloses that Mrs. Selik was ill with a bleeding duodenal ulcer complicated by intestinal bleeding; that she was hospitalized August 26, 1945; that an exploratory operation was performed September 10th, that she was confined in the hospital until September 20th, that after her discharge from the hospital she was confined to her home and her condition slightly improved, that her attending physician was of the opinion that she was "in no condition to appear as a witness   *   *   *   and to do so would aggravate her condition to such a degree that it would be against the advice of said physician," and that the physician did not have an opinion as to

when the witness could appear in court but in his judgment it would be not less than 30 days.

In a very large measure, under the circumstances of the instant case, the trial judge was vested with discretionary power in granting or denying a continuance. *People* v. *Jackzo,* 206 Mich. 183, 190. In denying Selik's motion for a continuance the trial judge was not guilty of an abuse of discretion. The instant case involved not only the trial of Selik but of the four other defendants. The State had made extensive preparations for the trial on October 23d, the date for trial which the court had fixed as far back as August 30th. This motion for continuance was not made until October 19th, and heard on October 22d, the day before the set trial date. Obviously Selik had knowledge of his wife's illness during all the time intervening since August 26th, on which date she was hospitalized. Also, he knew that his wife was his only available alibi witness who could corroborate his testimony in that respect. That he did not advise his counsel of Mrs. Selik's condition until just shortly prior to the service of the motion for continuance ought not to enable Selik to take advantage of his self-made situation with which he confronted the trial court. Further, in a strict sense Selik was not entitled to have his wife's testimony at the trial as an alibi witness, because he failed to comply with the statute which provides that when a defendant in a criminal case not cognizable by a justice of the peace proposes to offer the testimony of alibi witnesses, "such defendant shall at the time of arraignment or within ten days thereafter but not less than four days before the trial of such cause file and serve upon the prosecuting attorney in such cause a notice in writing of his intention to claim such defense and * * * such notice shall include specific information as to the place at which the accused claims to have been at the time of the

alleged offense." 3 Comp. Laws 1929, § 17313 (Stat. Ann. § 28.1043). No attempt was made by Selik or his counsel to comply with the above quoted statute. We are not prepared, under the noted circumstances, to accept the contention that Selik's motion for continuance which was not filed until October 19th, resulted in substantial compliance with the statutory notice required incident to the defense of an alibi.

The record also discloses that during the hearing of Selik's motion for continuance, the prosecuting attorney consented that the deposition of Selik's wife might be taken during the course of the trial, which obviously was to be of some considerable length. With some intervening intervals the trial of the case was in progress until December 7, 1945. Some showing was made that Mrs. Selik's condition was such that she should not be subjected to the strain of even taking a deposition. Such showing was not overly convincing, notwithstanding in a letter dated November 29, 1945, addressed to the trial judge by Mrs. Selik's attending physician he stated: "This is to certify that I consider Mrs. Myron Selik to be too ill to be subjected to any cross-examination." No effort was made to take the deposition of Mrs. Selik and it may be noted that had she testified, or her deposition been taken, her testimony would have been only cumulative of that given at the trial by Selik. Without referring to further attendant circumstances we conclude that the trial judge was not in error in denying Selik's motion for a continuance, nor did such denial result in Selik being deprived of due process of law. In so holding we are not unmindful, as pointed out in the reply brief, that after the court's denial of this motion to continue and on October 29, 1945, a notice of alibi in behalf of Fleisher and Selik was filed in the cause. While each of these two defendants gave testimony of this character, Mrs. Selik was not produced as a witness.

We are also of the opinion that the motion by defendant Mahoney for a continuance, heard October 22, 1945, was properly denied. He had been given ample notice that the trial was set for October 23, 1945. Nonetheless he waited until October 19th to retain new counsel who on October 20th made this motion on the ground that he had not had time to prepare for trial. Our review of the record satisfies us that Mahoney was ably represented throughout this long trial. His present counsel was obtained on October 19th, and taking testimony did not commence until November 2d. Just when or why Mahoney's former counsel ceased to represent him does not satisfactorily appear in the record. Under the circumstances the trial court in the exercise of his discretion was amply justified in denying this motion for continuance. *People* v. *Schneider*, 309 Mich. 158. Incident to his ruling the court quite properly said:

"This man had other counsel and in view of the situation he sees fit at this late date to change counsel, there isn't much the court can do about it because if the circumstances were allowed to go on indefinitely, every time just before trial, an accused could change counsel and again get another delay and that could be endless."

After the trial was well under way the testimony disclosed that, as above stated, the Eisner auto used in making the trip to Pontiac was loaned by Eisner to Hyman Niskar. Luks and Abramowitz testified that Fleisher drove the Eisner car. In the Fleisher-Selik reply brief it is stated: "Defendants have never claimed that this car was not used in the Pontiac robbery," but evidently defendants hoped to substantiate their theory that Luks or some other participant in the robbery used the Eisner car, instead of any of the appellants. Any such testimony would

have conflicted materially with that of Luks and Abramowitz. Hyman Niskar was not indorsed on the information. When the above developed, counsel for Fleisher and Selik made the following motions: (1) That the prosecution be required to indorse Niskar as a *res gestae* witness; (2) that the case be continued for the purpose of procuring Niskar's presence; (3) and that the prosecution disclose the names of officers who might have knowledge concerning Niskar. Appellants assert error in the trial court's denial of each of the above motions; but we do not so find. In this connection appellants are wrong in their assumption that Niskar, under this record, was a *res gestae* witness of the robbery with which defendants were charged. No showing was made that Niskar had any knowledge as to who drove the Eisner automobile to Pontiac. And further, we think, counsel overrate this particular phase of the record when they say in their brief:

"Witnesses Luks and Abramowitz attempted to tie Fleisher into the Pontiac robbery by testifying that Harry Fleisher drove the (Eisner) car to Pontiac. The owner of the car, Martin Eisner, testified that on the occasion in question he had loaned the car, which was used, to Hyman Niskar."

It was not by the testimony as to who drove the Eisner car to Pontiac that it was "attempted to tie Fleisher into the Pontiac robbery." Who drove the Eisner car was a mere incident. Fleisher's part in the robbery, as claimed by the people, was detailed by the direct testimony of Abramowitz and Luks. The uncontroverted testimony of Eisner was that he loaned his car to Niskar, but there is also testimony that Niskar occupied a room in the apartment of defendant Selik and in the brief in behalf of Fleisher and Selik, Niskar is referred to as "an individual known to the police." It appears from the

record that for more than a month prior to the court's denial on December 3, 1945, of the above motions, the prosecution had been making an effort to locate Niskar but without success. In this respect the circumstances somewhat parallel those in *People v. Boyd,* 151 Mich. 577, wherein a headnote reads:

"Where the complaining witness in a prosecution under the liquor law absconded immediately after making the complaint, and the officers were unable to find him, and he was not produced on the examination, and diligent search failed to discover him before the trial, there was sufficient excuse shown for leaving his name off the information and not producing him at the trial."

Such showing as was made as to Niskar's whereabouts at the time was that he was beyond the jurisdiction of the court, and there was no showing that any testimony he might have given would have been favorable to appellants. Names of officers to whom was assigned the task of locating Niskar appeared in the testimony given prior to the court's ruling. Under the attendant circumstances the denials of appellants' motions were proper.

It is urged by appellants that an error resulted from the court sustaining an objection and refusing to permit defendant Fleisher, who had been convicted of a felony by a jury in another case (See *People v. Fleish* [alias Fleisher], 321 Mich. 443), to answer the question pertaining to the former case: "Are you guilty or not guilty?" It is important to note that this question was asked of Fleisher on his direct examination. He had testified that Abramowitz and Luks in the other case, as in this case, had testified against him. Obviously appellants' theory was that as a result in part of Abramowitz and Luks having been granted immunity, they were falsifying in the instant case as they were claimed to have done in the former case. However, the excluded answer per-

tained to an issue which had been adjudicated and which was foreign to the issue in the instant case. Hence, the scope of such examination was largely within the trial court's discretion, and such discretion was not abused by the above ruling. We are mindful counsel advised the trial court that Fleisher's former conviction was pending on appeal and "That isn't final." But we take judicial notice of this Court's records which disclose that in the meantime we have affirmed Fleisher's former conviction and denied a rehearing. In view of the above this claim of error is without merit. We are not herein concerned with a like ruling in a case wherein the former conviction was drawn out by cross-examination as in *Wagman* v. *United States* (C. C. A.), 269 Fed. 568, cited in appellants' brief. Nor is the cited case of *Driscoll* v. *People,* 47 Mich. 413, wherein the earlier charges against the witness were disclosed on cross-examination, applicable to the record in the instant case.

In the Fleisher-Selik brief as an alleged error the following is submitted:

"Should the people have been required to produce a written statement taken from the witness Abramowitz by the prosecutor of Jackson county after his arrest for complicity in the Hooper murder?"

The demand that the people produce the statement was denied. It appears that in so ruling the trial court took the position, and properly so, that so far as disclosed to the court the demanded statement pertained solely to a collateral matter. Testimony taken prior to this demand disclosed the following. Incident to the investigation of the Hooper murder (See *People* v. *Fleish* [alias Fleisher], *supra.*) Abramowitz was arrested in March, 1945, and about 25 days later he revealed to officers information pertinent to that crime which was committed in Jackson county. Within a day or so thereafter the prosecut-

ing attorney of Jackson county took a stenographic statement from Abramowitz, which is the statement that was demanded in the instant case, wherein the wholly separate offense charged was committed in Oakland county. The Jackson county prosecuting attorney did not take part as a prosecutor in this Oakland county case. His official concern was solely with the Hooper murder in Jackson county. As noted, it was not made to appear before the trial judge that the demanded statement contained anything relative to the issue in the instant case; and he was not duty bound to authorize a fishing expedition by counsel who demanded production of the statement taken by the Jackson county prosecuting attorney incident to the investigation of the Hooper murder committed in Jackson county. There was no error in the court's ruling.

In support of their appeal, appellants urged a very large number of alleged errors on the part of the court incident to the charge given to the jury and the refusal of the court to give certain requested charges. Forty-two requests to charge by defendants Fleisher and Selik, covering 36 pages of the record, are presented, though the claimed errors pertain to only a part of such requests. Some 18 other requests were preferred by defendants Mahoney and Davidson and the court's refusal to give some of them is urged as error. The charge of the court was necessarily somewhat lengthy. In our judgment it covered all phases of the case essential to a fair and impartial presentation to the jury of the law in the light of which the verdict should be rendered. We have given careful consideration to each of the asserted errors, but we do not find in any of such contentions by appellants anything which would justify the conclusion that thereby appellants, or any of them, were deprived of a fair trial. It would serve no useful purpose to review in detail

each of the numerous alleged errors of this type, but it may be noted that refusal of requests made in certain instances was justified because such requests were argumentative and some pertained to matters which were for determination of the court rather than for consideration by the jury. Others were sufficiently covered by the charge as given. We find no prejudicial error in the charge to the jury or in the refusal of the court to give the requested charges of which appellants complain.

In the briefs on this appeal the following questions have been presented:

"Should the court have given an unsolicited additional charge urging agreement of jurors during their deliberations?

"Did the Court err in vacating the order reducing sentence?"

Each of the above matters has been reviewed in Mr. Justice SHARPE's opinion in *People* v. *Chivas, supra,* and our holding therein that there was no error in either of the above respects is controlling in the instant case.

As to appellant Davidson, it should be noted that while he joined with the other appellants in settling the record on this appeal, he has not filed a brief nor was an oral argument made by his counsel. Under such circumstances this Court, had a proper motion been made, might well have dismissed this appeal as to Davidson. Nonetheless owing to the serious nature of the case we have, without the benefit of a brief in his behalf, given consideration to the alleged errors pertaining to him. As already noted, we find no merit in Davidson's assertion of prejudicial error having resulted from the court's refusal to give certain of Davidson's requests to charge.

Davidson asserts in the reasons and grounds for his appeal that the trial court erroneously denied

his motion to quash the information as to him and discharge him from custody. At the time of the preliminary examination of the other defendants (June 21 and 22, 1945) Davidson was a fugitive from justice. Later he was taken into custody, extradited from California, and without a preliminary examination he was arraigned on October 1, 1945, in the circuit court and pleaded not guilty to the charge in the information. This procedure was in accord with that provided by statute. See 3 Comp. Laws 1929, § 17256 (Stat. Ann. § 28.982). As previously noted, on August 30th the case had been set for trial October 23, 1945. On October 18, 1945, Davidson filed a motion to quash the information as to him, based in part on the ground that Davidson had not been "afforded the right to arraignment on the original complaint and warrant," that there was no proof Davidson was a fugitive from justice, and that the testimony taken at the preliminary examination did not mention or identify Davidson as participating in the alleged offense. Under the record before us we do not find merit in any of the above contentions, and in any event under the circumstances above noted the denial of Davidson's motion to quash, et cetera, made so shortly prior to the date set for trial and after Davidson had entered his plea of not guilty, was not an abuse of discretion on the part of the trial court and was not error. By his plea of not guilty, prior alleged defects or irregularities were waived. *People* v. *Tate,* 315 Mich. 76.

Numerous other alleged errors are urged by appellants. Included therein is the claim of appellants that at various times throughout the trial the prosecutor made prejudicial remarks and unjustified contentions. It would serve no good purpose and would result in an intolerably lengthy opinion to review each of these in detail. Nonetheless each of such contentions has been given careful consideration

and we conclude that neither separately nor collectively did such matters result in prejudicial error in the sense that appellants or any of them were thereby deprived of a fair trial. Impaneling of the jury in this case began October 23, 1945, and with some intermissions the trial continued and was concluded December 7th. The condensed record on appeal contains nearly 1,200 pages. It is quite impossible in lengthy and vigorously contested trials of this character to attain absolute perfection. Mere irregularities which occur at various intervals during such trials do not justify reversal. In its overall aspect the instant case in the particulars under consideration is not materially different from the record in *People* v. *Fleish* [alias Fleisher], *supra*, wherein the conviction of certain of defendants was affirmed, notwithstanding like deviations from strictly proper procedure. In the instant case we hold appellants were not deprived of their constitutional right of a fair trial and that the record abundantly supports their conviction. In view of the foregoing, it is unnecessary to further review in detail appellants' claims incident to their motions for a new trial, which the trial judge properly denied.

The conviction and sentence of the respective appellants are affirmed.

Bushnell, C. J., and Sharpe, Boyles, Reid, and Butzel, JJ., concurred.

Dethmers and Carr, JJ., did not sit.