## PEOPLE *v.* COAPMAN.

1. CRIMINAL LAW—CONFESSION.

    The commission of the crime charged should be established before a confession by the accused is received in evidence.

2. SAME—CORPUS DELICTI—UNCORROBORATED TESTIMONY OF ACCUSED.

    The corpus delicti may not be shown by the uncorroborated testimony of the accused.

3. SAME—CIRCUMSTANTIAL EVIDENCE—PRIMA FACIE CASE—PROOF OF DEFENDANT'S CONNECTION.

    The fact that a crime has been committed may be shown by circumstantial evidence and the making of a prima facie case opens the door to proof connecting the accused with the offense.

4. HOMICIDE—EVIDENCE—ALIUNDE CONFESSION—QUESTION FOR JURY.

    In prosecution for first-degree murder, evidence aside from defendant's repudiated confession *held,* sufficient to submit the case to the jury, where defendant's brother testified that defendant had first hit the victim on the chin with his fist, later struck the victim across the neck with a piece of lead and then

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 20 Am Jur, Evidence, § 484.
[1, 2, 4] 26 Am Jur, Homicide, § 383.
[2, 4] 20 Am Jur, Evidence, §§ 1233, 1242.
[2, 4] Corroboration of confession.  127 ALR 1130.
[3] 20 Am Jur, Evidence, §§ 1230, 1231; 26 Am Jur, Homicide, § 456.
[4] 20 Am Jur, Evidence, § 1234.
[5-9] 14 Am Jur, Criminal Law, §§ 232, 234; 26 Am Jur, Homicide, § 242.
[7, 8] 14 Am Jur, Criminal Law, § 236.
[9] 3 Am Jur, Appeal and Error, § 823.
[10] 26 Am Jur, Homicide, § 499.
[11] 26 Am Jur, Homicide, §§ 528, 529.
[12] 26 Am Jur, Homicide, §§ 488, 519, 520.
[14] 3 Am Jur, Appeal and Error, §§ 695, 770, 775, 821.
[15] 3 Am Jur, Appeal and Error, § 776.

put a belt around the victim's neck and pulled it tight for about 5 minutes and left the body at the edge of a swamp (CL 1948, § 750.316).

5. SAME—VENUE—PETITION TO ATTORNEY GENERAL—ORDER—EVIDENCE—STATUTES.

Where prosecuting attorney's petition to the attorney general stating that it was impossible to determine where victim of homicide, a resident of Wayne county but whose body was found in Oakland county, had been killed and attorney general directed that prosecution be conducted in Oakland county, introduction of petition and order in evidence in prosecution for murder in the first degree did not constitute reversible error, where the petition and order complied with statute (CL 1948, §§ 750.316, 762.3).

6. SAME—MORTAL WOUND IN ONE COUNTY—DEATH IN ANOTHER COUNTY—VENUE.

Where a mortal wound or injury is inflicted in one county and death ensues in another county, the offense may be prosecuted and punished in either county (CL 1948, § 762.5).

7. CRIMINAL LAW—VENUE—OFFENSE COMMITTED ON A MOVING VEHICLE.

Where an offense has been committed on a train, automobile, or other moving vehicle, the offense may be prosecuted in any county in which the conveyance was during the journey in the course of which the crime was committed (CL 1948, § 762.9).

8. HOMICIDE—VENUE—OFFENSE COMMITTED ON A MOVING VEHICLE.

Prosecution for first-degree murder was properly conducted in Oakland county where body of victim, a resident of Wayne county, was found in Oakland and death may have resulted from strangulation in that county or from blows upon the head and neck inflicted by defendant while in car which traveled in both counties, and attorney general, upon petition by Oakland prosecuting attorney, ordered trial to be conducted in Oakland county (CL 1948, §§ 750.316, 762.5, 762.9).

9. SAME—CAUSE OF DEATH—VENUE—QUESTIONS REVIEWABLE.

It is unnecessary to determine whether or not the question of venue was properly raised by defendant, where there were various possible causes of death of the victim and trial court had jurisdiction to determine defendant's guilt irrespective of which was the cause of death or if all causes combined to effect death of resident of another county in county where his body was found (CL 1948, § 750.316).

10. SAME—EVIDENCE—FIRST-DEGREE MURDER.

Where, under record presented, it was for jury to determine whether the victim's death resulted from violence inflicted on him by defendant and, if so, whether the killing constituted deliberate premeditated murder, the question of whether defendant had committed the crime charged was properly submitted to the jury (CL 1948, § 750.316).

11. SAME—CREDIBILITY OF WITNESSES—INSTRUCTIONS—REQUESTS TO CHARGE.

In prosecution for first-degree murder, defendant was not prejudiced by reason of the trial court's failure to give the substance of his requests to charge in the exact language given where the instruction covered the subjects sought to be covered somewhat more succinctly and required jury to determine credibility of versions presented by defendant and his brother, the people's principal witness (CL 1948, § 750.316).

12. SAME—PROMISES BY PROSECUTOR TO PRINCIPAL WITNESS TO CHANGE STORY—IMPEACHMENT TESTIMONY.

Observation of trial judge that there was no truth to the story that promises had been made to the people's principal witness, the defendant's brother, to get him to change his story *held*, not reversible error, under the circumstances, in prosecution for first-degree murder, where it appears that there had been variances between statements made by the witness and such were shown by way of witnesses to impeach his credibility, but there was no testimony indicating a promise to the witness emanating from the prosecutor's office to induce him to change his story (CL 1948, § 750.316).

13. SAME—MURDER IN AUTOMOBILE—INSPECTION OF CAR—DISCRETION OF COURT.

In prosecution for first-degree murder which was alleged to have taken place, at least in part, in an automobile, denial of defendant's request for an opportunity to obtain a like type of car for inspection by the jury did not constitute an abuse of discretion nor prejudicial error in view of the general familiarity with automobiles including the particular type of car in question (CL 1948, § 750.316).

14. APPEAL AND ERROR—QUESTIONS REVIEWABLE—STATEMENT OF REASONS AND GROUNDS FOR APPEAL.

Matters occurring in the course of a trial of a criminal case which are not covered in the statement of reasons and grounds for appeal as set forth in the record do not require consideration by the Supreme Court.

15. SAME—QUESTIONS REVIEWABLE—ABANDONMENT.
Matters specifically set forth in the statement of reasons and grounds for appeal but not argued in defendant's brief are presumably abandoned.

Appeal from Oakland; Doty (Frank L.), J. Submitted October 13, 1949. (Docket No. 78, Calendar No. 43,958.) Decided December 7, 1949.

George Bruce Coapman was convicted of murder in the first degree. Affirmed.

*Davidson & Theut* and *George A. Beauchamp,* for appellant.

*Stephen J. Roth,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Clyde D. Underwood,* Prosecuting Attorney, and *Bernard Girard,* Assistant Prosecuting Attorney, for the people.

CARR, J. Defendant was convicted of first-degree murder by a jury in the circuit court of Oakland county. The information against him charged that on, to-wit, the 10th of May, 1947, at the township of Orion in said county, the defendant "feloniously, wilfully and of his malice aforethought, did kill and murder one Richard Edward Schweitzer." Following the conviction, sentence was imposed in accordance with the statute.* Defendant has appealed, claiming that the corpus delicti was not properly established, that the circuit court of Oakland county did not have jurisdiction, and that errors occurring in the conduct of the trial require the setting aside of the verdict and sentence.

On the trial of the case it was the claim of the people that on July 5, 1947, the body of Richard Schweitzer, a young man approximately 20 years

---

* CL 1948, § 750.316 (Stat Ann § 28.548).—REPORTER.

of age, was found half submerged in water in a bog or swamp in Oakland county. A few days later defendant was taken into custody, and on or about July 15th made a statement to the prosecuting attorney of Oakland county in which he in effect admitted his guilt of the offense for which he was subsequently prosecuted. On the trial this statement was introduced in evidence by the prosecution. Charles Coapman, a brother of defendant, was the principal witness against him. At the time of the trial in October, 1947, defendant was 31 and Charles was 22. The latter testified in substance that on May 10, 1947, about 11 o'clock in the forenoon, defendant came to the home of the witness in Grosse Pointe, and that following some conversation the 2 brothers and Schweitzer left in a 1946 Chevrolet automobile for the stated purpose of going to Port Sanilac, Michigan. Charles claimed that shortly after the parties had started on their trip an argument arose between defendant and Schweitzer, the former demanding a gun claimed to be in Schweitzer's possession, which the latter at first promised to give defendant. Later in the course of the argument he refused to do so.

According to the witness a further argument arose as to whether Schweitzer intended to give information to public authorities with reference to the breaking and entering of a gasoline station on or about May 8th preceding, in which offense the parties were involved. Charles testified in substance that Schweitzer's attitude was not satisfactory to defendant, that the latter struck Schweitzer with his fist on the chin or in the mouth, that at the time Schweitzer slumped forward, and that immediately thereafter defendant picked up a piece of lead from under the car seat and struck Schweitzer across the neck with it. Thereafter the body of Schweitzer was slid over the front seat into the

rear of the car, defendant being unassisted by Charles in such action except as the latter, who, it is claimed, was driving the car, slowed down at defendant's direction to approximately 5 miles per hour.

The witness further testified that he drove, at the direction of defendant, to the location where the body of Schweitzer was subsequently found, that he then assisted defendant in removing the body from the car, that he (Charles) examined the body but could not discover a pulse beat, and that he stated to defendant at the time that Schweitzer was dead. Defendant replied, it is claimed, that he was "going to make sure," whereupon he removed a belt from the body of Schweitzer, put it around the neck, and pulled it tight for about 5 minutes. Defendant then removed certain articles from Schweitzer's pockets. The body was left lying on the ground at the edge of the swamp, and the 2 brothers proceeded on their way to Port Sanilac. On the return trip Schweitzer's jacket, which had been left in the back seat of the car, was hidden under a culvert near the city of Port Huron, where the officers, subsequently directed by Charles, found it prior to the trial. The witness further testified that after he and defendant returned to defendant's home in Detroit the inside of the car was washed to remove blood from the rubber matting and floor board. He also claimed that on May 15th following the alleged homicide he and defendant returned to the place above referred to in Oakland county and found the body of Schweitzer in the same position as when they left it 5 days previously.

After he was taken into custody Charles made certain statements to the officers investigating the death of Schweitzer, which statements were not, the record indicates, consistent in all details with the alleged confession made by the defendant. Such

inconsistencies were sufficient to raise some question as to whether the felonious homicide, if it was such, had been committed in Wayne county or in Oakland county. Apparently for the purpose of obviating any question as to venue that might subsequently be raised, the prosecuting attorney of Oakland county filed a petition with the attorney general of the State under CL 1929, § 17121, as amended by PA 1935, No 151 (CL 1948, § 762.3 [Stat Ann § 28.846]). Said section contains the following provision:

"When it shall appear to the attorney general that a felony has been committed within the State of Michigan, and that it is impossible to determine within which county it occurred, said offense may be alleged in the indictment to have been committed, and may be prosecuted and punished in such county as the attorney general shall designate."

The prosecutor's petition set forth the finding of the body of Schweitzer, that the condition of such body indicated that death had resulted from felonious acts, that the residence of Schweitzer had been in Wayne county, and that from the facts in possession of the prosecutor it was impossible to determine at the time whether the homicide had been committed in Oakland county or in Wayne county. Thereupon the attorney general, acting in accordance with the provision of the statute above quoted, designated Oakland county for the prosecution of the alleged offense. Proceedings were thereafter taken in accordance with such designation.

The confession of the defendant made on or about July 15th to the prosecuting attorney of Oakland county, which, as above noted, was introduced in evidence on the trial, corroborated the testimony of Charles Coapman in many respects. In such

statement defendant admitted that he, Charles, and Schweitzer, were together in the automobile and that an altercation arose between himself and Schweitzer. It was his claim, however, that he demanded that Schweitzer pay him $10 which he said Schweitzer owed him, and that in the course of the argument Schweitzer made derogatory remarks concerning a girl friend of defendant's. Defendant further claimed that the affray between himself and Schweitzer took place outside the car, that he knocked Schweitzer down, that Schweitzer arose and apparently endeavored to run away, that defendant pursued him, struck him and again knocked him down, and that such action was repeated. He stated also that he took Schweitzer's belt, placed it around the neck, and drew it tight. Defendant claimed further in this statement that while he was pulling the belt he noticed that the back of Schweitzer's neck and his ears began to turn a "reddish purple." The further statements made by defendant justify the inference that he thought when he left Schweitzer at the edge of the swamp that Schweitzer was dead as a result of strangulation. It further appears that defendant made other statements not consistent with the above confession. On the trial of the case he repudiated the confession and claimed in substance that Charles Coapman had had a fight with Schweitzer and had inflicted injuries on him, culminating in the alleged use of the belt by Charles.

A post-mortem examination of the body of Richard Schweitzer was held, but it appears from the testimony of the physician who conducted it that the body was in such an advanced stage of decomposition at the time that the results obtained were not certain and definite. The physician's testimony indicates that he concluded death had not resulted from a fractured skull, or from drowning. For the reason

above suggested, he was unable to express any opinion as to whether the claimed blows on the mouth and neck of Schweitzer, or either of them, were fatal. In answer to a hypothetical question he indicated his opinion to be that the use of the belt in the manner claimed by Charles Coapman in his testimony might have caused death by strangulation.

Counsel for defendant contend that the corpus delicti was not proved by testimony aliunde the alleged confession of defendant. Emphasis is placed on the fact that the medical witness, above referred to, was unable to state positively from the post-mortem examination that the death of Schweitzer had resulted from violence. The rule has been repeatedly recognized by this Court that the commission of the crime charged should be established before a confession by the accused is received in evidence. It may be noted in this connection that the record in the case at bar does not disclose that any objection was made to the introduction of defendant's confession. The proposition that the corpus delicti may not be shown by the uncorroborated testimony of the accused is not open to question in this State. *People* v. *Kirby,* 223 Mich 440. In *People* v. *Trine,* 164 Mich 1, it was held that the fact that a crime has been committed may be shown by circumstantial evidence, and that the making of a prima facie case opens the door to proof to connect the accused with the offense. See, also, *People* v. *Kimbrough,* 193 Mich 330; *Peterson* v. *Oceana Circuit Judge,* 243 Mich 215; *People* v. *Paton,* 284 Mich 427.

In the case at bar we think the testimony introduced by the people, aside from the confession of the defendant, was sufficient to require the submission of the case to the jury. As set forth in the above statement of facts, Charles Coapman testified to the inflicting of violence by defendant on the person of

Schweitzer, culminating in the use of the belt and the leaving of the body at the edge of the swamp. Such testimony is corroborated to a certain extent by the proofs with reference to the finding of the body, its location, and other circumstances. Whether such testimony was true was for the jury to determine. It was sufficient to establish a prima facie case of felonious homicide. On this record it is scarcely open to question that the death of Richard Schweitzer resulted from violence. It was not incumbent on the people to establish with certainty whether the death resulted from strangulation by defendant, or from the blows alleged to have been struck by him. All the acts of violence may have contributed to the death. The court was not in error in denying defendant's motion, made during the presentation of the people's case, for a directed verdict on the ground that the corpus delicti had not been shown by testimony aliunde the confession.

On the trial of the case the prosecuting attorney of Oakland county was a witness and testified without objection to the making of his request to the attorney general to designate the county in which the criminal prosecution should be held, and to the order made as a result of such petition. Thereupon the petition and the order were offered in evidence as people's exhibits 18 and 19. Objection was interposed on the ground that there was no occasion for action by the attorney general because the evidence indicated that the crime, if committed at all, took place in either Wayne or Macomb county rather than in Oakland, and further that there was no evidence introduced on the trial showing the facts on which the order was based. The exhibits were received, and it is now claimed on behalf of defendant that such action constituted error prejudicial to the defendant. No question is raised as to the validity of the statutory provision above quoted. The peti-

tion by the prosecutor was sufficient to indicate the situation, namely, that it could not be determined at the time whether the felonious homicide, if such it was, was committed in Wayne county or in Oakland county. The petition and the order complied with the statute.

We are unable to agree with the claim of counsel for defendant that the proofs conclusively established that the death of Richard Schweitzer did not occur in Oakland county, and that the injuries resulting in his death were not inflicted in said county. CL 1948, § 762.5 (Stat Ann § 28.848) provides that:

"If any mortal wound shall be given or other violence or injury shall be inflicted, or any poison shall be administered in 1 county by means whereof death shall ensue in another county, the offense may be prosecuted and punished in either county."

Under the confession of the defendant made to the prosecuting attorney of Oakland county on or about July 15, 1947, the injuries were inflicted and the death resulted in the county of Oakland, at the place where the body was subsequently found. The testimony of Charles Coapman is to the effect that the injuries were inflicted, in part, in the car while in motion on a public highway. Counsel for the people call attention in this respect to CL 1948, § 762.9 (Stat Ann § 28.852) which provides in substance that whenever a felony has been committed on a train, automobile, or other moving vehicle, the offense may be prosecuted in any county in which the conveyance was during the journey in the course of which the crime was committed.

It is claimed further, on behalf of the State, that the question of venue was not properly raised at the trial, and therefore is not entitled to consideration on appeal. Reliance is placed on *People* v. *Sims,* 257 Mich 478, and *People* v. *Petrosky,* 286 Mich 397.

Apparently the question was not raised except by the objection to exhibits 18 and 19. It is unnecessary to determine if such objection was sufficient to properly raise the issue in the trial court, or if the statutory provision relating to the prosecution of felonies committed on trains and other moving vehicles applies in the instant case. If the death resulted from strangulation, the fatal injury and its culmination occurred in Oakland county. If, as claimed by Charles Coapman and admitted by defendant in his confession, the latter placed the belt around the neck of Schweitzer, drew it tight, and kept it there for approximately 5 minutes, the inference would seem to be fully justified that defendant at the time had some reason to believe that Schweitzer was still alive. The statement in the confession as to the change in color of Schweitzer's ears and neck support such inference. On the record before us we hold that the circuit court of Oakland county had jurisdiction, and that exhibits 18 and 19 were not open to objection for the reasons assigned by counsel.

It is further claimed in defendant's behalf that the evidence did not justify submission of the case to the jury upon the issue of first-degree murder. Such claim seems to rest on the theory that the death of Richard Schweitzer resulted solely, under the testimony of Charles Coapman, from the blows inflicted by defendant. It ignores altogether the possible theory that the death was caused by strangulation. If such was the case, obviously there was ample opportunity for premeditation. The same conclusion follows if the attack on Schweitzer was made by defendant in the manner described by the latter in his confession to the prosecuting attorney of Oakland county. If the death resulted from the blows that Charles Coapman testified were struck by defendant in the automobile the theory that the

crime was premeditated is not eliminated from the case. It is a fair inference from the testimony of Charles, as well as from the testimony of defendant, that Richard Schweitzer was in the automobile in question on the 10th of May at defendant's invitation. According to the testimony of Charles, the piece of lead with which Schweitzer was struck was beneath the seat of the automobile. It is a reasonable conclusion from the testimony that defendant knew it was there. The arguments with reference to the gun or whether Schweitzer intended to inform the authorities with reference to the breaking and entering offense were stated deliberately by defendant. Under all the testimony in the record it was for the jury to determine whether Schweitzer's death resulted from violence inflicted on him by defendant, and, if so, whether the killing constituted deliberate premeditated murder. The trial court was not in error in submitting such question to the jury.

Counsel for defendant submitted to the court certain requests to charge, numbered 1 to 6. At the conclusion of the general charge, request No 6 was called specifically to the attention of the trial court, and given to the jury in a form of which counsel expressed approval. Apparently no reference was made at the time to the other requests. It is now urged that the failure of the court to give them was prejudicial error. Each of such requests had reference to the testimony of Charles Coapman. The 1st and 3rd were substantially identical and would, if given, have required the jury, if the members thereof did not believe the testimony of Charles that defendant struck Richard Schweitzer in the face or jaw with his fist, and on the neck with a piece of lead, and thereafter placed the body of Richard Schweitzer in the back seat of the automobile, without assistance, to return a verdict of not guilty. Under the requests as framed, if the

jury had come to the conclusion that the testimony of Charles to the effect that he had not aided his brother in putting Schweitzer into the back of the automobile was not true, such finding would have required an acquittal. Such requests, as well as the 2nd and 4th, ignored the possibility that death resulted from strangulation. The 5th request permitted the jury to disregard the entire testimony of Charles Coapman if they did not believe him as to any material fact, and to require in such event a verdict of not guilty. The request made no reference to testimony corroborated by physical facts or by other witnesses whom the jury believed.

Without reference to possible objections to the form in which the requests were submitted, we think that the charge as given fairly presented the issues with reference to the credibility of Charles Coapman and also of the defendant. The following instruction, of which defendant does not complain, was given:

"If you find any witness, including the respondent in this case, has falsely testified, you may disregard his testimony, but you cannot do it without reason. His testimony is to be considered the same as others; it is to be considered whether it is consistent or inconsistent with prior statements and whether Charles Coapman's testimony was consistent or inconsistent with prior statements. All are facts to be taken into consideration in passing on this question.

"Now, you have had a conflict here, 2 different stories, one brother blaming the other. Which one are you to believe? That's the question.   *   *   *

"Now, you have 2 brothers' stories differing in many respects. Consider their testimony carefully in arriving at your conclusions in this case."

We think the jury must have understood from the instructions given them, considered in conjunc-

tion with the balance of the charge, that the determination of the case rested on the weight that the jury concluded should be given to the testimony of defendant and of Charles Coapman, respectively. No juror could have failed to understand that defendant could not be found guilty unless the testimony of Charles Coapman was found to be true in its material aspect. Apparently this was the exact proposition to which the requests were directed. Defendant was not prejudiced because the charge given covered the issue more succinctly than did the requests. See *People* v. *Fleisher,* 322 Mich 474.

On the trial of the case certain relatives of defendant and Charles testified that the latter had made statements to them indicating that he had been given some promise of immunity from prosecution if he would testify in the case. Apparently such testimony was offered in the attempt to impeach the testimony of Charles to the effect that no assurances of such character had been given him. In charging the jury the trial court said:

"In fairness to the prosecution and the prosecutor's office of this county, I wish to say that there is no truth about any promises being made at all to get him to change his story. Why, everybody knows that's a crime in itself. In justification of the prosecutor's office I think I should make that statement."

It may be inferred from the statement quoted that in the argument of the case to the jury counsel for defendant had implied, in discussing the credibility of the testimony of Charles, that promises had been made to him by the prosecuting attorney, or by someone connected with that office. Our attention is not directed to any positive testimony of such import. The statement by the impeaching witnesses referred to, as to what Charles had said to them, indicated that he had made prior statements not

consistent with his testimony on the trial. The testimony was admissible merely to establish the fact of such contradiction, rather than as affirmative proof that the prosecutor's office had entered into any such arrangement. Moreover, the testimony of the defendant's witnesses did not refer to any statement by Charles indicating a promise to induce him to change his story. Rather such prior statements, if made, referred in terms to an alleged attempt to persuade him *to testify,* a matter to which the charge of the trial court above quoted made no reference. So far as this record discloses there was no suggestion during the trial of the case that anyone connected with the prosecutor's office had sought to persuade Charles to "change his story." While the observation of the trial judge might well have been omitted from the charge, we do not think the jury, by any possibility, could have been misled thereby to the prejudice of the defendant.

At the conclusion of the proofs counsel for defendant requested an opportunity to obtain a 1946 Chevrolet for inspection by the jury. The request was not granted, the trial judge indicating by his statements that he did not consider such inspection necessary because of general familiarity with automobiles, including the particular type of car in question. The granting of a request of such nature rests largely in the discretion of the trial court. Under the facts here involved such discretion was not abused. We do not think that defendant could by any possibility have been prejudiced by the ruling of the court. *People* v. *McKernan,* 236 Mich 226.

In their brief counsel for defendant have made reference to certain matters occurring in the course of the trial which are not covered by their statement of reasons and grounds for appeal as set forth in the record. Such matters do not require consideration. Other matters specifically set forth in said

statement, or suggested thereby, are not argued in defendant's brief and presumably have been abandoned. *Sudinski* v. *Krohn,* 242 Mich 497; *Bradford* v. *Goldman,* 290 Mich 338; *People* v. *Funk,* 321 Mich 617 (5 ALR2d 1077); Court Rule No 66, § 3 (1945). In any event none is sufficiently serious in nature to require discussion. It is our conclusion, based on an examination of the record before us, that defendant had a fair trial and that no error sufficiently prejudicial to require a reversal of the case occurred during its course.

The verdict and sentence are affirmed.

SHARPE, C. J., and BUSHNELL, BOYLES, REID, NORTH, DETHMERS, and BUTZEL, JJ., concurred.